William J. JACKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8306.

Court of Appeals of Alaska.

Feb. 20, 2004.

Kit Karjala, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John R. Bandle, Assistant District Attorney, Leonard M. Linton, Jr., District Attorney, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: MANNHEIMER and STEWART, Judges, and ANDREWS, Senior Superior Court Judge.[*]

*OPINION*

MANNHEIMER, Judge.

In early 2001, William J. Jackson was charged with driving while his license was suspended. At his arraignment, the district court set two future court dates for Jackson: a pre-trial conference scheduled for March 21st, and a trial call scheduled for April 13th. Jackson failed to appear in court on these dates, and he was subsequently charged with two counts of misdemeanor failure to appear.[1]

 At his trial, Jackson conceded that he had been notified of the two court dates. However, he asserted that he incorrectly recalled the date of his first court appearance (the pre-trial conference), and then, when he realized that he had missed his pre-trial conference, he did not understand that he was still obliged to appear for the trial call on April 13th. Jackson testified that he assumed that both hearings would be rescheduled, and that someone would notify him of the new dates.

Jackson's attorney asked the trial judge to instruct the jury that the State was obliged to prove that Jackson's culpable mental state (his conscious choice not to appear in court) coexisted simultaneously with his physical

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

1. AS 12.30.060.

acts of failing to appear. That is, the defense attorney wanted the jury instructed that Jackson could not be found guilty unless the State proved that, on the very dates that Jackson was scheduled to appear in court (*i.e.,* March 21 and April 13, 2001), Jackson consciously considered his obligation to appear in court and decided to ignore it.[2]

The trial judge (District Court Judge Natalie K. Finn) refused to give this proposed instruction, and Jackson now argues that this was error. He contends that, in the absence of the requested instruction, the jury may have convicted him based solely on his concession that he had received notice of his two court dates, without finding a "concurrence of . . . guilty act and . . . guilty mind."

But even though Judge Finn declined to give Jackson's proposed instruction, she did not ignore these matters of law when she instructed the jury. Judge Finn informed the jurors that Jackson could be convicted of failure to appear only if he acted "knowingly", and she gave the jurors the statutory definition of this culpable mental state.[3] Moreover, Judge Finn also instructed the jurors that Jackson could be convicted of failure to appear only if the State proved "a joint operation of [the] act or conduct and [the] culpable mental state".

Under these instructions, Judge Finn allowed Jackson's attorney to argue to the jury that Jackson should be acquitted if the jury believed that there was a reasonable possibility that Jackson made an honest mistake about the first court date, and then, having missed that first court date, Jackson did not understand his continuing obligation to appear for the second date. Nevertheless, Jackson asserts that the jury instructions—and thus the jury's verdicts—were flawed.

Jackson's appeal presents the question of what, precisely, is meant by the "joint operation" of conduct and culpable mental state when a defendant is charged with failure to appear. As explained above, Jackson contends that the State was obliged to prove that Jackson made two conscious decisions not to appear in court, and that these conscious decisions occurred on the very days of his two scheduled court appearances (March 21 and April 13, 2001). But this is not the law.

■ The "joint operation" requirement—the requisite concurrence of the defendant's culpable mental state with the defendant's act or omission—is satisfied if the defendant's culpable mental state actuates the prohibited conduct, even though there may not be strict simultaneity between the two.[4] As explained in Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd ed.1982), p. 933,

> One error to be avoided is the false notion that [the] "concurrence" [of culpable mental state and prohibited conduct] means . . . mere coincidence[.] [T]he actual requirement is that the two elements of crime must be "brought together" in the sense of a causal relation between the *mens rea* and the *actus reus.* Stated in other words, the *actus reus* must be attributable to the *mens rea,* and if this relation is clearly shown[,] it is unimportant that the two were not present at the same time, whereas [temporal] coexistence is not sufficient if the causal relationship is lacking.

Thus, Jackson would be guilty of "knowingly" failing to appear if he decided early on that he would not attend his scheduled court appearances, and he then dismissed the matter from his mind. Jackson's conscious decision not to attend court, combined with his subsequent failure to appear on the two specified days, would constitute a sufficient con-

---

2. Jackson's proposed instruction read:
 I have instructed you that the required [culpable] mental state in this case is "knowingly." I have also instructed you that the State must prove that the alleged crimes occurred on or about March 21, 2001, and April 13, 2001. Therefore, the State must prove to you beyond a reasonable doubt that not only did Mr. Jackson fail to appear for required court hearings on or about March 21, 2001 and April 13, 2001, but that he knew[,] on or about those dates of March 21, 2001 and April 13, 2001, that he was failing to appear. . . . In other words, the required [culpable] mental [state] and the alleged conduct must occur simultaneously.

3. AS 11.81.900(a)(2).

4. *See* Wayne R. LaFave, *Substantive Criminal Law* (2nd ed.2003), § 6.3(a), Vol. 1, p. 451.

currence of culpable mental state and prohibited act or omission—even if it were true that, on the two scheduled days, Jackson gave no conscious thought to his court appearances.

Jackson's proposed instruction would have required the jury to find simultaneity of culpable mental state and prohibited conduct when, in fact, this was not required. Accordingly, Judge Finn properly rejected the proposed instruction.

Jackson also argues that the jury may have convicted him based solely on the undisputed evidence that he was informed (at his arraignment) of his two future court dates. But we do not read the jury instructions to allow this.

As explained above, the jury was told that Jackson could not be convicted unless the jurors were convinced beyond a reasonable doubt that Jackson's conduct (*i.e.*, his failure to appear) was knowing, and they were further told that Jackson could not be convicted unless the jurors found a "joint operation" of culpable mental state and prohibited conduct. Jackson presented the defense that he made an honest mistake as to the date of his first scheduled court appearance and that, after he realized that he had missed this first court appearance, he honestly believed that his second court appearance would be canceled and that he would be notified of new court dates. If the jury had accepted these assertions, they would not have found that Jackson's non-appearance was "knowing" as defined in the instructions.

Finally, Jackson contends that the prosecutor, in a portion of the State's summation, invited the jurors to find that Jackson acted "knowingly" based solely on the fact that Jackson was informed of his two court dates. But the prosecutor did not argue that Jackson's asserted defense of mistake was legally irrelevant so long as the jurors found that Jackson had received advance notice of the two court dates. Rather, the prosecutor argued that the jurors should consider all of the circumstances before deciding whether to credit Jackson's asserted defense of mistake:

> *Prosecutor:* State of mind. You don't have to rely on [Jackson's testimony on this subject]. You'll receive a jury instruction [on this point]. You know who determines his state of mind? You do. The jury decides [whether] what ... he [was] saying [is] true[.] ...

> [Quoting from a jury instruction:] "State of mind may be proved by circumstantial evidence. It rarely can be established by any other means.... [T]here can be no eyewitness to the state of mind with which the acts were done or omitted." You can't read minds.... But what a defendant does or fails to do may indicate his state [of] mind or lack thereof. So you get to look and weigh ... his actions.

> [Again quoting from a jury instruction:] "In determining issues of state of mind, the jury is entitled to consider any statements made, acts done, or omitted by the accused, and all facts and circumstances in evidence which may aid determination of the defendant's state of mind"—you get to determine that. Was he telling the truth, or are his excuses reasonable? Did he know? You get to decide that, okay?

We have considered and rejected all of Jackson's claims of error. Accordingly, the judgement of the district court is AFFIRMED.

COATS, Chief Judge, not participating.